IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **RHONDA MICHELLE JOHNSON** | § | |
| | § | |
| v. | § | NO. 4:24-CV-00986-SDJ-BD |
| | § | |
| **MIDFIRST BANK** | § | |

### MEMORANDUM OPINION AND ORDER

Defendant MidFirst Bank moved for a protective order. Dkt. 73; *see* Dkts. 75 (response), 77 (reply). The motion will be granted.

### BACKGROUND

There are four sets of discovery at issue. Plaintiff Rhonda Michelle Johnson filed her first sets of requests for admission, requests for production, and interrogatories. Dkts. 73-1 to -3. MidFirst served responses and objections to Johnson's first set of discovery and, after conferring with Johnson, supplemented its responses. Dkt. 73 at 2–3. Johnson then filed a "revised first set of interrogatories," which included both restatements from her first set and new interrogatories. Dkt. 73-4. MidFirst responded and objected to the revised set of interrogatories. Dkt. 73 at 3. Johnson then served a second set of interrogatories, requests for production, and requests for admission, Dkt. 73-5, and before MidFirst responded, a third set of interrogatories and requests for admission, Dkt. 73-6. MidFirst now seeks a protective order relieving it of its duty to respond to the second and third sets of discovery.

### LAW

Under Federal Rule of Civil Procedure 26(c)(1), a district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The movant bears the burden of showing that a protective order is necessary, 'which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir.

2017) (quoting *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998)). The district court has broad discretion in determining whether to grant a motion for a protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) (noting that, although "[t]he federal rules do not themselves limit the use of discovered documents or information," Rule 26(c) "afford[s] district courts the ability to impose limits" and that "the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained" so long as "the party from whom discovery is sought shows 'good cause'").

## DISCUSSION

### A. Interrogatories

MidFirst argues that it should not have to respond to the second and third sets of interrogatories because they exceed the number permitted. Dkt. 73 at 5. It is correct.

Unless otherwise stipulated, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). When interrogatories are challenged as exceeding the number allowed, the court should determine whether each interrogatory contains discreet subparts. *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 194 (E.D. Tex. 2016). Although there is no exact formula to determine what constitutes a discreet subpart, most courts follow the "related question" approach. *Id.* at 196. Under that approach, "subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories." *Id.* A subpart is independent of the first question if the first question can be fully and completely answered without answering the second. *Id*; *Moser v. Navistar Int'l Corp.*, No. 4:17-cv-00598, 2018 WL 3614012, at *6 (E.D. Tex. July 27, 2018).

Although it is common for parties to amend their interrogatories, Johnson served her revised set of interrogatories on MidFirst only after it had responded to her first set of interrogatories. *Cf.*

2

*Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2015 WL 11070282, at *2 (E.D. Tex. July 21, 2015) (discussing amended interrogatories); Dkt. 73 at 3. A party cannot properly exceed the permissible number of interrogatories by entitling some "revised" if it has already benefited from its opponent's responses. The court will treat the revised set of interrogatories as a second set of interrogatories to the extent they are not duplicative of the first set of interrogatories.

Whether Johnson has exceeded the permissible number of interrogatories depends on how many subparts each contains. Interrogatories 3–7, 9, and 12 contain discreet subparts. Dkt. 73-3. Revised interrogatories 1, 3, 4, and 6–10 are duplicative of the first set of interrogatories. Dkt. 73-4. The remaining interrogatories and revised interrogatories did not contain discreet subparts. Dkts. 73-3 to -4. In total, Johnson's first set of interrogatories and revised set of interrogatories contain 28 discreet subparts.

**Interrogatory 1**

> Describe in detail the process by which MidFirst Bank determined it had the authority to enforce the promissory note against Plaintiff, including any review of the original loan agreement. Provide all documents, communications, or legal opinions that support MidFirst Bank's determination of its enforcement rights.

This interrogatory does not contain discreet subparts, but its second sentence is a request for production, rather than an interrogatory.

**Interrogatory 2**

> Describe in detail every step MidFirst Bank took to verify the authenticity and enforceability of the promissory note before initiating collection or enforcement actions against Plaintiff. Identify who conducted the verification, how authenticity was determined, and what documents were reviewed.

This interrogatory does not contain discreet subparts. An interrogatory that asks whether a particular action was taken, then asks when, by who, and how that action was taken relates to a single topic. *Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004).

**Interrogatory 3**

> State whether any material alterations, modifications, endorsements, missing pages, or unauthorized changes have been made to the original promissory note post-execution by

3

> Plaintiff. If so: (a) Describe each alteration, who authorized it, and when it occurred; (b) Identify all individuals, title and contact information, involved in modifying the note; (c) Produce all versions of the note in MidFirst's possession, including metadata or electronically stored versions; (d) Explain how MidFirst Bank determined that the altered note remains enforceable.

This interrogatory contains two discreet subparts. First, parts (a)–(b) ask whether modifications were made and for details about those modifications. But part (d) asks how MidFirst determined that any modifications did not change the enforceability of the note. Because MidFirst can fully answer the first question without answering the second and vice versa, these are distinct subparts. Part (c) is a request for production.

**Interrogatory 4**

> Explain whether MidFirst Bank reviewed, audited, and verified whether the original lender complied with Generally Accepted Accounting Principles (GAAP) when originating the subject loan prior to enforcement. If so: (a) State who performed the review (name, title, company); (b) What records were examined (e.g., ledgers, accounting logs, balance sheets); (c) Whether any issues of non-compliance were identified and how they were resolved. (d) Produce any and all documents, internal reports, audits, or memoranda related to this verification.

This interrogatory contains two discreet subparts. First, it asks how a review was performed, then what the results of that review were. *See Moser*, 2018 WL 3614012, at *9. Part (d) is a request for production. An interrogatory asking about a general practice and then the application of that practice to particular facts contains two subparts. *See Banks*, 222 F.R.D. at 11.

**Interrogatory 5**

> Identify all Truth in Lending Act (TILA) disclosures provided to Plaintiff at loan origination and at any subsequent assignments. State whether MidFirst Bank: (a) Reviewed or verified the accuracy of these disclosures before enforcing the loan; (b) Determined whether any material misrepresentations existed in prior disclosures.

This interrogatory contains three discreet subparts. First, it asks to identify particular documents. It then asks whether those documents were reviewed for accuracy. Finally, it asks whether material misrepresentations existed in earlier documents. *Id.* at 10.

**Interrogatory 6**

> Provide the specific amount MidFirst Bank paid to acquire the subject loan from the previous owner or assignee, including the date of acquisition. (a) If acquired in bulk, describe the method used to allocate the portion of the total consideration specifically to Plaintiff's loan; (b) Provide details of the bulk purchase, including the number of loans acquired and the total consideration paid; (c) Identify all records reflecting payment for the subject loan, including wire transfers, purchase agreements, or accounting ledgers. (d) If MidFirst Bank cannot produce payment records, describe what steps were taken to locate them and why they are unavailable.

This interrogatory contains three discreet subparts. The first sentence and part (a) ask how much MidFirst paid for the loan, part (b) asks how many loans were acquired in a bulk purchase and for how much money, and part (d) asks how MidFirst determined it had no responsive records if it did. Part (c) is a request for production.

**Interrogatory 7**

> State whether MidFirst Bank maintains records of the original loan account number from the originating lender. If not, (a) Explain how MidFirst verified it acquired the correct loan for enforcement; (b) Identify all internal tracking numbers or loan identification methods used in MidFirst's records.

This interrogatory contains three discreet subparts. First, it asks whether MidFirst keeps a particular record, then how it verified the authenticity of the loan, then how it tracks and identifies loans. MidFirst could answer any one of these three questions without answering any other.

**Interrogatory 8**

> Describe in detail how MidFirst Bank accounted for the acquisition of the subject loan in its financial and accounting records, including: (a) Whether the promissory note was classified as an asset; (b) Whether the loan was securitized or transferred into a trust; Provide details. (c) What internal bookkeeping records exist reflecting MidFirst's claim of ownership.

This interrogatory does not contain discreet subparts. It asks about MidFirst's record keeping, then specifies particular details of its record keeping Johnson is interested in. Asking about details within a particular subject does not create a discreet subpart. *See Est. of Manship v. United States*,

232 F.R.D. 552, 555 (M.D. La. 2005), *aff'd,* No. CV 04-91-C, 2006 WL 594521 (M.D. La. Jan. 13, 2006).

**Interrogatory 9**

> State whether MidFirst Bank received any Qualified Written Requests from Plaintiff and: (a) Identify who reviewed and responded to each QWR; (b) Summarize MidFirst's investigation into each QWR request; (c) Provide dates and copies of MidFirst's responses.

This interrogatory contains two discreet subparts. First, it asks whether MidFirst received and responded to the Qualified Written Requests. It then asks about MidFirst's investigation into them. Part (c) is a request for production.

**Interrogatory 10**

> Describe all collection, foreclosure, or enforcement actions MidFirst Bank initiated against Plaintiff, including: (a) Dates of collection notices, foreclosure letters, demand letters, or default notices; (b) The employees, attorneys, or third-party agents involved in collection efforts.

This interrogatory does not contain discreet subparts. It asks for details about the topic discussed.

**Interrogatory 11**

> Explain the standard policies and procedures MidFirst Bank follows when verifying the validity and enforceability of a promissory note before initiating collection or foreclosure actions.

This interrogatory does not contain discreet subparts.

**Interrogatory 12**

> For each affirmative defense asserted in MidFirst's Answer, identify: (a) The factual basis for the defense; (b) Any legal authority or statutes supporting the defense; (c) Any witnesses or documents MidFirst intends to use to support each defense.

This interrogatory contains multiple discreet subparts. Where an interrogatory asks for the basis of multiple claims or defenses, it will usually constitute multiple subparts. *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010). But if it relates to multiple closely related defenses that would be supported by the same facts, those defenses might be grouped together. *Pouncil v. Branch L. Firm*, 277 F.R.D. 642, 647 (D. Kan. 2011).

6

MidFirst's answer asserts twelve affirmative defenses. Dkt. 60 at 9. Some of those are actually assertions that Johnson cannot satisfy the elements of her claims, rather than affirmative defenses. *Id.* Other defenses include the statute of limitations, the statute of frauds, unclean hands, the economic-loss doctrine, a statutory defense, estoppel, and contributory negligence. *Id.* Because it will find that Johnson has issued more than 25 interrogatories anyway, the court need not determine which of these defenses are closely related to each other.

**Interrogatory 13**

> Describe all steps MidFirst Bank has taken to comply with the Real Estate Settlement Procedures Act (RESPA) and other federal regulations concerning the servicing and enforcement of the subject loan.

This interrogatory does not contain discreet subparts.

**Interrogatory 14**

> Identify and produce all documents, reports, or electronic records, including those that may challenge MidFirst Bank's standing to enforce the note, upon which MidFirst Bank intends to rely in defending against Plaintiff's claims. This should encompass documents that substantiate MidFirst Bank's assertion of ownership, right to enforce, and any other claim or defense raised in response to Plaintiff's allegations. Limit your response to documents that: (a) Directly support MidFirst Bank's standing to enforce the note against Plaintiff; (b) Substantiate MidFirst Bank's authority to initiate collection or foreclosure actions; (c) Are intended to be introduced as evidence in any phase of the current litigation.

This interrogatory does not contain discreet subparts. Instead, it asks MidBank which documents it intends to rely on and then clarifies the intended scope of the interrogatory.

**Interrogatory 15**

> State whether MidFirst Bank has communicated with any third parties regarding Plaintiff's loan, including but not limited to investors, servicers, or agencies. For each communication, describe the nature, content, and purpose, and how these communications may have influenced the handling, modification, or enforcement of Plaintiff's loan. Provide dates and copies of any written communications.

This interrogatory does not contain discreet subparts. The advisory committee notes contemplate this scenario: "[A] question asking about communications of a particular type should be treated as

a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." 146 F.R.D. 401, 675–76.

**Revised Interrogatory 2**

    State the source of funds used to issue Plaintiff's loan at closing, identifying whether those funds were drawn from assets held by Town Square Mortgage and Investments Inc., or were generated through any pledge, monetization, or conversion of Plaintiff's promissory note.

This interrogatory does not contain discreet subparts.

**Revised Interrogatory 5**

    State whether MidFirst Bank, any affiliated entity, assignor, received any financial benefit, profit, or payment in relation to Plaintiff's promissory note outside of regular interest or principal payments.

This interrogatory does not contain discreet subparts.

**Revised Interrogatory 11**

    Below is a screenshot of the Special Warranty Deed provided by Defendant in the discovery file titled 260-500 2024.06.13 - Response. State all facts known to You concerning the phrase in the Special Warranty Deed stating: "Note of even date herewith in the original amount of $294,467 . . . payable to the order of Town Square Mortgage and Investments," including whether this reflects ownership, assignment, or any deposit or monetization of the promissory note.

This interrogatory does not contain discreet subparts.

**Revised Interrogatory 12**

    State whether MidFirst Bank asserts legal authority to enforce Plaintiff's promissory note notwithstanding any alteration or endorsement made after execution without Plaintiff's consent, and identify the material facts and legal principles supporting that assertion.

This interrogatory does not contain discreet subparts.

    All told, Johnson's first set of interrogatories and revised first set of interrogatories contain 28 discreet interrogatories. Because the first set of interrogatories and the revised set of interrogatories exceed the 25 permitted by Federal Rule of Civil Procedure 33(a)(1), MidFirst is not obliged to respond to the second and third sets of interrogatories.

### B. Requests for production and admission

Unlike interrogatories, requests for production and admission are not limited in number unless limited by the court. Fed. R. Civ. P. 34, 36. "A district court may limit discovery if the information sought is duplicative, unreasonably cumulative, or when the burden of discovery outweighs the likely benefit of the information sought." *Muhammad v. Ness*, 47 F.3d 427 (5th Cir. 1995).

MidFirst argues that Johnson's second set of requests for production, Dkts. 73-5, and second and third sets of requests for admission, Dkts. 73-5 to -6, are duplicative of her first sets of discovery requests, Dkts. 73-1 to -2. Collectively, Johnson has issued 49 requests for admission and 29 requests for production that relate to similar and overlapping subject matter. MidFirst has already produced documents and admissions responsive to most of those requests. Dkt. 73 at 5. For example, request for production number four of Johnson's second set of requests for production requests "all general ledger entries, accounting records, or other financial documentation that reflects MidFirst Bank's acquisition, ownership, or transfer of the Note." Dkt. 73-5 at 5. Documents responsive to that request for production would have been included in MidFirst's response to request for production number four of Johnson's first set, which asked for "all bookkeeping entries and financial records . . . related to the alleged loan." Dkt. 73-2 at 5.

MidFirst explains that it has already produced information or documents responsive to each of Johnson's discovery requests and that it has no more information in its control that has not been produced to Johnson. To the extent that she seeks information that has not already been produced, Johnson may make non-duplicative requests for discovery until 30 days before the close of discovery. But MidFirst has met its burden to show that it should not be obligated to object or respond to the currently outstanding discovery requests.

## CONCLUSION

It is **ORDERED** that the motion for a protective order, Dkt. 73, is **GRANTED.** MidFirst is not required to object or respond to Johnson's second and third sets of discovery requests.

So **ORDERED** and **SIGNED** this 13th day of November, 2025.

_____
Bill Davis
United States Magistrate Judge